## Gaylord v. Scarff.

In a proceeding to foreclose the equity of redemption in lands sold for taxes, against the property itself, the land should be designated and described, not only in the notice contemplated in sections 506, 1715 and 2083 of the Code, but also in the publication provided for by sections 507 and 1725.

Where the proceeding to foreclose is against the land itself, under section 507 of the Code, and it is against certain named lots of land, *and others*, not describing them, the court will not acquire jurisdiction as to the parcels of land not described, nor will the property be bound by the decree rendered in such proceeding.

Where it is sought to divest the title to real estate, on account of the non-payment of taxes, a strict compliance with the law is essential.

If the court rendering a decree, has no jurisdiction of the person of the defendant, he will not be bound, and this, whether the court is one of limited or general jurisdiction. And so, if the proceeding is against property, it cannot be condemned, and will not be bound, unless it is properly and legally brought before the court.

In a proceeding against real estate, to foreclose the equity of redemption, under a tax sale, in order to bind the property, it should be proceeded against by description, and the notice should specify and make known, that the plaintiff was seeking to foreclose the equity of redemption of the owner in and to said property, describing it, so that the owner may have an opportunity of knowing that his title is about to be divested.

Under section 508 of the Code, a decree of foreclosure, under a tax deed, is conclusive in the same degree as in other actions.

In a proceeding to foreclose the equity of redemption under a tax deed, the defendant may show that the taxes were paid prior to the sale.

Section 509 of the Code, applies to those cases where payment of the taxes before sale, is shown prior to the rendition of the decree.

After the rendition of a decree of foreclosure under a tax deed, where

the court is shown to have jurisdiction, the owner is concluded from showing, in a subsequent proceeding, the payment of the taxes prior to the sale.

As the non-payment of the taxes is the essential fact upon which the power to sell rests, the decree of foreclosure necessarily includes within it, the finding of that fact, and must be conclusive.

After the Code went into operation, and prior to the taking effect of chapter 74 of the acts of 1853, there was no power to sell lands for the delinquent taxes of any year prior to 1851.

Whether under a sale of lands for delinquent taxes, made under chapter 74 of the acts of 1853, the purchaser can proceed to foreclose the equity of redemption of the owner, by action in the manner provided by the Code, *quare?*

*Appeal from the Des Moines District Court.*

MONDAY, JUNE 14.

This was an action to recover lot six in out-lot nine hundred and sixty one, in Barrett's sub-division of lots in the city of Burlington. The defendant answers, setting up his title as required by the petition of plaintiff, which is as follows: Barrett purchased of the United States, on the 8th of November, 1844; he conveyed to one Blankenship, who, on the 11th of April, 1856, conveyed to defendant. Plaintiff replies, setting up certain proceedings under a tax sale, and a decree thereon, vesting the title in said lot in one Barlow, who conveyed to one Greene, February 17, 1856, who, on the same day conveyed to Clark and Tuley—who, on the 8th of May, 1857, conveyed to plaintiff. To this replication there was a rejoinder, setting up various grounds upon which the tax sale and decree relied upon by plaintiff, were irregular and void, and insisting that plaintiff acquired no title thereby. Demurrer to rejoinder sustained, and defendant neglecting to plead over, but abiding by his rejoinder in manner and form as pleaded, judgment was rendered for plaintiff, from which defendant appeals. The matters alleged in the replication and rejoinder are sufficiently stated in the opinion of the court.

*J. C. Hall* and *C. H. Phelps*, for the appellant.

*C. Ben Darwin*, for the appellee.

WRIGHT, C. J.*—Did the court below err, in sustaining the demurrer to plaintiff's rejoinder? To determine this question, we have to ascertain, whether the facts set up in said rejoinder, so far as well pleaded, are sufficient to defeat plaintiff's title.

Barlow purchased the lot in controversy, under a sale for the delinquent taxes for the year 1850. The decree was rendered in his favor, on the 13th of November, 1855, but in what year the treasurer sold the property, does not appear. The caption of the decree, which is made a part of the plaintiff's replication, is as follows: "J. W. Barlow *v.* Lots 1, 11, 12, 15, and 17, in block 962, and other lots in the city of Burlington, and the unknown owners of the same." The decree then proceeds to state certain things as found, and to adjudge that the equity of redemption of the former owner or owners in and to said property, (reciting some thirty lots, including the one in controversy), be forever barred and foreclosed, and that plaintiff be vested with an absolute and unconditional title thereto.

The rejoinder denies that said decree is a bar to the title of defendant, or that Barlow thereunder acquired any interest or claim to said lot, for the following, among other reasons: *First.* That said suit was brought in the name of J. W. Barlow, against lots 1, 11, 12, 15 and 17, in block 962, *and other lots in the city of Burlington, and the unknown owners of the same*, as defendants, and not against this defendant, or the said Barrett or Blankenship, nor either of them, nor any other person by name, nor by any

---

*STOCKTON, J., having been of counsel, took no part in the decision of this cause.

proper or sufficient designation in law, or otherwise; nor had they any notice, knowledge, or information of the pendency of said suit; nor did they make any appearance; nor was the said lot proceeded against by attachment, or other lawful proceeding *in rem ;* and so he says that the court entering said decree had no jurisdiction of the person of the owner of said property, nor ;of the property, and had no power or authority to enter said decree.

*Second.* That the taxes on said lot for the year 1850, and for every year from 1844 to 1856, were duly and regularly paid, and discharged to the proper officer.

By sections 506 and 507, of the Code, it is provided that the purchaser at a tax sale, may, at any time after six months from the day of sale, file his petition in the district court, as in case of a foreclosure of mortgage, the notice and service to be the same " as in case of a mortgage;" but if the owner of the land is not known, the action may be brought against the land itself—the service being made, as in a case of a non-resident. And then, by the next section, (508), it is provided that the court shall have jurisdiction of such actions as in chancery, and the decree therein shall be conclusive in the same degree as in other actions.

Without now determining what would be the effect of such a decree, where the proceeding is against the land itself, if the land shall be fully and clearly designated and described, we shall confine ourselves to the case now before us. The defendant, in his rejoinder, in substance, avers that this lot was not proceeded against by any proper or sufficient designation in law, nor by any legal proceeding *in rem;* that the plaintiff's action was against lots 1, 11, 12, 15 and 17, in block 962, and other lots in the city of Burlington. If this averment is true, can said decree conclude the defendant, or any person claiming title to this lot, adverse to the title under the tax sale? We think not.

We need not advert to the strictness required in all the States, where it is sought to divest title on account of the non-payment of taxes. A strict compliance of the law is uniformly regarded as essential. Nor need we do

more than state, that if the court rendering the decree has no jurisdiction of the person of the defendant, he will not be bound; and this, whether the court is one of general or of limited jurisdiction.    And so, if the proceeding is against property, it cannot be condemned, and will not be bound, unless it is properly and legally brought before the court.

If a plaintiff in such an action, therefore, would proceed against the property itself, it should be designated and described, not only in his notice, as contemplated in sections 506, 1715, and 2083, of the Code, but also in the publication contemplated in sections 507 and 1725.   And we are clearly of the opinion, that the court cannot acquire jurisdiction, and the property will not be bound, where the proceeding is against certain named lots, *and others*, (not naming them), as to the property or lot not named or designated.    Title cannot be divested by a proceeding thus devoid of the essential elements to confer jurisdiction.   It might as well be said, that the defendant was concluded by a judgment rendered in a suit brought against Richard F. Barrett and others—the others not being named or served.   To bind the property, it should be proceeded against, at least by description, and the notice should specify and make known, that the plaintiff is seeking to foreclose the equity of redemption of the owner, in and to said property—naming it—so that the owner may have an opportunity of knowing that his title is about to be divested.   To our minds, it would be subversive of every legal principle, and contrary to the plainest dictates of right and good conscience, to conclude the owner of land by a proceeding of this nature, where he has had no formal notice, and where the constructive notice fails to designate or make known to him, that his property is sought to be taken from him.   We have yet to find a case or an authority, which goes so far as to hold, that property can be condemned, and the title to it changed, by a proceeding *in rem*, which does not refer to, and specify it, so that those interested may have an opportunity to de-

fend.  It has not escaped our observation, that in numerous instances, these suits are prosecuted against a number of tracts of land or town lots, (the notice as published naming one or more lots), and concluding, "and other lots, and the unknown owners thereof." Upon what principle, the lots or tracts, not named, can be bound, or how, as to those, the decree can pass any title, we cannot comprehend.

If it be true, then, as averred in the rejoinder of plaintiff, that the action of Barlow was instituted and prosecuted against certain named lots, and others, (not naming the lot now in controversy), we do not think the decree was effectual in passing the title to him, as to this lot; and as a consequence, we must conclude that the plaintiff could acquire no title through him.

But, we further inquire, can the defendant prove that the taxes were, in fact, paid for the year 1850, (the year for which the lot was sold), and thus defeat the plaintiff's title.  Aside from the effect of the decree, foreclosing the equity of redemption, this proposition would not perhaps admit of much doubt.  It is said "that the delinquency of the owner to pay the taxes, is the *essential* fact upon which the power of sale rests.  The right to sell is founded on the fact of the non-payment of the tax.  If the tax be paid before the sale, the lien of the State is discharged, and the right to sell no longer exists.  Where the owner has performed all of his duties to the government, no court will sanction, under any circumstances, the forfeiture of his rights of property.  The law was intended to operate upon the unwilling and negligent citizen alone.  The legislative power extends no further.  The sale involves an assertion by the officer, that the taxes are due and unpaid, and the purchaser relies upon this, or on his own investigations, and his title depends upon its truth.  The title of the purchaser is *contingent*, so far as it may be affected by proof, establishing the fact that the tax has been paid before the sale was made.  This is an *implied*

*condition*, annexed to every grant of this kind, founded on a sound construction of the law, the power of the government in collecting taxes, and the principles of natural justice. Therefore, every purchaser takes a deed subject to the condition, that the taxes have not been paid ; and if his title is defeated, he must look to the government for that relief which such a case may require." Blackwell on Tax Titles, 484.

In New York, the statute provided that the conveyance from the comptroller, should vest an absolute estate *in fee simple*, in the purchaser at the tax sale. It was held, however, in *Jackson* v. *Moore*, 18 Johnson, 441, that notwithstanding such sale and deed, no title would pass, if the taxes were in fact paid. Says Woodsworth, J., "the right to sell, is founded upon the fact of non-payment; the returns made to the comptroller are not conclusive *evidence of the fact*, but only *prima facie*, and such as will justify him as an officer, in the discharge of his duty. The *validity* of the sale and conveyance, are necessarily to depend on the contingency of non-payment; when this is drawn in question, it is competent to prove payment, and by so doing, no rule of law is violated; it is not permitting parol evidence to impugn or destroy a written contract, but is consistent with the deed; and if a deed is thereby defeated, it arises upon the proof of a fact, upon which, by law, the operation of the deed was made to depend, at the time it was executed."

Indeed, aside from the effect to be given to the decree, there would seem to be but little doubt, upon authority, that payment of taxes before sale, might be shown, and if proved, would defeat the purchaser's title. If the court rendering the decree, however, has jurisdiction of the person of the defendant, or the property, can the owner be allowed afterwards, to show such payment, or is the decree conclusive. As already stated, the law is, that such a decree is conclusive in the same degree as in other actions. Code, section 508. And section 509 provides

Gaylord v. Scarff.

that when by the mistake or wrongful act of the treasurer, land has been sold on which no tax was due at the time, the county is to hold the purchaser harmless, by paying him the amount of principal and interest to which he would have been entitled, had the land been rightly sold ; and the treasurer and his sureties, will be liable for the amount to the county, on his bond, or the purchaser may recover directly of the treasurer.

This section, we think, must apply to those cases where the payment is shown before the decree. After decree, where the court is shown to have jurisdiction, we think, the owner is concluded, and cannot be permitted to prove the payment. Any other construction, would take from the judgment, that conclusiveness which the law expressly says shall be given to it. As the non-payment is the essential fact, upon which the power to sell vests, the decree necessarily includes within it, the finding of that fact, and in the absence of fraud, must be conclusive.

One further point is worthy of consideration, before closing this opinion. This lot was sold for the taxes due for the year 1850. When the sale took place does not appear. Prior to the taking effect of chapter seventy-four of the laws of 1853, and after the Code went into operation, there was no power to sell lands for the delinquent taxes for any year prior to 1851. If, therefore, the sale in this instance, was made prior to January 1, 1854, it was without authority and void, and plaintiff could acquire no title. And, *quare :* under a sale for such delinquent taxes, can the purchaser proceed to foreclose, by action, in the same manner, as provided for in the Code. The right is not expressly given by the law of 1853, and it is perhaps not clear that it was intended to be given. But as to this, we express no further opinion.

Judgment reversed.