## MILLER V. WETHERBY.

1. HUSBAND AND WIFE: CONVEYANCE BY WIFE: ESTOPPEL. The defendant was the illegitimate son of one C. who afterwards intermarried with one P. H. to whom she had no issue. During coverture she purchased with her own means, in her own name, and as her own property; the real estate in controversy; and afterwards, in October, 1848, by her own deed, her husband not joining therein, conveyed the same to one J. taking a mortage back in her own name to secure the purchase money; which was subsequently collected in an action at law in the name of the husband against J., in which the premises were sold under execution to the plaintiff's grantor as the property of said J.—of all of which proceedings in said case the said C. and her husband had full notice. *Held*;

1. That C. held the real estate in her own right, as permitted and contemplated by § 1, chap. 5 acts of 1846, then in force.

2. That her husband had no estate or interest in the land.

3. That under § 24, chap. 54, Laws of 1843, it was essential to the validity of the deed to J. that the husband of C. should have joined in the execution thereof.

4. That the conveyance by C., the taking of the mortgage and the subsequent proceedings for the collection of the purchase money, do not estop the defendant from setting up his title as the heir of C. against the plaintiff.

*Appeal from Wapello District Court.*

FRIDAY, DECEMBER 6.

IN CHANCERY. From the bill and exhibits it appears that defendant is the illegitimate son of one Catherine, who afterwards intermarried with Peter Huff. During coverture she purchased from the U. S. the tract of land in controvesy, with her own means, in her own name and as her own

property. This land she afterwards, by her own deed, her husband not joining therein, conveyed to one Jordan, taking a mortgage back in her own name to secure the purchase money. Subsequently an action at law was brought against Jordan in the name of the husband to recover this money; judgment recovered thereon and the land sold, and through the purchaser at the sheriff's sale complainant claims title. The bill charges that Catherine and Peter were fully cognizant of all these transactions and made no objections to any of them. A demurrer to the bill was sustained and complainant appeals.

*Hendershott & Burton* for the appellant.

I. The title to the land in controversy was in the wife. Acts 1846, ch. 5 § 1, 2.

II. The land having been purchased by the wife with her own money and for her own use and benefit; and there never having been issue born to Peter Hough, he had no estate of any character whatever, and therefore had no interest to convey by any deed of his.

III. The wife could dispose of her separate estate as a *feme sole.* 2 Story, Eq. Jur. §§ 1378-9, 1388, 1390; *Greenough* v. *Wigginton*, 2 G. Greene, 435.

In the case at bar the court will observe that Jordan conveyed the land in question to Mrs. Huff. See the deed of mortgage set up in the bill.

Here we have a conveyance from Jordan who unquestionably had the capacity to sell and convey real estate to Catharine Huff, who as clearly and unquestionably had the capacity and right to purchase. Here are grantor and grantee with full and equal power to sell and purchase. Legal grantor and grantee to each other. The question which we here desire to press upon the attention of the court, is as to the effect of the recitals contained in the deed from Jordan to Mrs. Huff, on her right to deny title in Jordan her grantee and

grantor.   These recitals and covenants are on the part of the grantor Jordan, who derived title from Mrs. Huff, that he "*gives, grants, bargains, sells, releases, conveys,* and *confirms,* &c."   "That he is *lawfully seized,* has *good* right and *lawful* authority to *sell* and *convey,* that the land is *free* and *clear* of all *manner* of *incumbrance whatever,* and that he will *warrant* and *defend* said premises."   These recitals and covenants are made by Jordan to Mrs. Huff, of and concerning land which she herself had conveyed to him with which conveyance she died satisfied   Here is a deed the power to execute which by Jordan is not questionable, made to and received by Mrs. Huff, in which all the most solemn recitals and covenants, such as, *grant, bargain, sell, convey, lawfully seized, good right* and *lawful authority* to *sell* and *convey,* FREE and CLEAR from all *manner* of *incumbrance, warrant* and *defend* &c., are contained, and yet it is contendedt that the grantee may come forward, or her son who stands in her shoes, may, and  deny that  her grantor had title to the land conveyed.   Jordan's GRANTOR who is also his grantee comes forward and says he was *not lawfully seized,* did *not* have *good* right and *lawful* authority to *sell* and *convey,* the land was *not free* from *all manner* of *incumbrance.* *Murphy* v. *Barnett,* 1 Law Rep. 106; *Filch* v. *Baldwin,* 17 Johns. 161; *Fowler* v.  *Woodyard,* 6 J. J. Marsh 606; *Jackson* v. *Ireland,* 3 Wend. 99; *Saylor* v. *Smith,* 12 do 57; *Riley* v. *Million,* 4 J. J. Marsh 395; *Carver* v. *Jackson,* ex. dem. 4 Peters 1; Phil. on Ev. C. & H. notes 3, vol. 1235, notes 869; Acts of Iowa, Old Blue Book 1843, p. 204, sec. 6,  Co. Litt. 365, Com. Dig. Guarantee, 2;  Bac. Abr. Warranty, G. H. I. & L.

*J. B. Perry* for the appellee.

The statutes of Iowa, 1843, page 207, § 24, provides that "A married woman may convey any of her real estate, by any conveyance thereof, executed by herself and hus-

band, and acknowledged by such married woman, and certified in the manner hereinafter prescribed, by some court authorized by this act to take and certify such acknowledgment."

I contend that unless her alleged conveyance to Jordan was made in accordance with the statutes of 1843, p. 207, § 24, 25 and 26, it is not voidable, but void. It will be borne in mind that a deed of a *feme covert* was void by the common law. See 1 R. L., 369. See also, 16 Ohio, 115, *Jackson* v. *Stevens*; also, *Jackson* v. *Caims*, 20 Ib., 203; *Doe ex. dem. De Peyster* v. *Howland*, 8 Cow., 277.

"Our courts have always entertained the opinion that a conveyance made by a married woman in relation to her real estate was an absolute nullity."

*Jackson* v. *Stevens*, 16 John., 110—"The deed of a *feme covert* is void by the common law; and though she acknowledge the execution after her husband's death, this shall not relate to the time of the original execution. It can be made operative only by virtue of an acknowledgment under the statute."

"By the laws of Maryland, which must govern in this case, a married woman can not dispose of her real property without the consent of her husband; nor can she execute a good and valid deed to pass real estate unless he shall join her in the deed. *Rhea* v. *Rhenner*, 1 Pet., 105." In this respect the law of Maryland was like the R. S. of Iowa 1843, p. 207, § 24. Peter Huff did not join in the conveyance—hence it is void.

"A deed made by husband and wife, but void for want of proper acknowledgment as to her, will not be made effectual after the death of her husband, unless by what would constitute a valid delivery, or amount to a new grant by her. *Miller* v. *Shackleford*, 3 Dana, 289; *Brown* v. *Spand*, 2 Rop., Con. Ct., 12, *Hepburn* v. *Dubols*, 12 Pet., 345."

"Though a wife's deed is void for defective acknowledgment, parol evidence may be given that she ratified it after her husband's death. *Jourdan* v. *Jourdan*, 9 S. & R. 268."

"A warranty in a deed of bargain and sale, executed by the wife together with her husband, and acknowledged after she was privately examined according to the act of the Assembly, will not bind the wife and her heirs. *Nicholson* v. *Hemsley*, 3 Har. & M'Hen. 409."

"A *feme covert* cannot bind herself by an executory contract to convey her own lands, even though her husband join with her in the obligation. *Ex parte Thomas*, 3 Greenl. 50."

"When a wife receives a separate estate by deed, after marriage, she is not authorized to devise such estate, unless the instrument gives her the power expressly. *Thomas* v. *Foluell*, Whart., 11."

"A deed of land held in right of the wife is ineffectual to pass the fee simple estate, when the wife, though she sign and seal the deed, yet does not join her husband as a party to the conveyance. *Dayne* v. *Parker*, 1 Fairf., 178."

I. A married woman can not be estopped by any deed of hers, either by deed or in pais.

"Though a wife is silent when she knows her husband is holding out her property as his own, she is not estopped by her mere silence. *Bank of the United States* v. *Lee*, 13 Pet., 107."

"A feme covert may by statute join with her husband in the execution of a conveyance of real estate; but she can not be bound by any of the covenants contained in the conveyance. *Aldrige* v. *Burlison*, 3 Blackf., 201."

"Where a wife has a perfect title to land, and a deed is afterwards executed by a third person to her and her husband, and accepted by them; this does not preclude her from setting up her original title, nor is she bound by any limitation or trust in the deed. Without stopping, therefore,

to enquire whether, under any circumstances, the lessor of the plaintiff could avail himself of that deed, as an estoppel, which I am clearly of the opinion he could not, the defendant never could be estopped by it, as she was a *feme covert*, when it was given. *Jackson ex dem. Shaw* v. *Spear*, 7 Wend., 401; *Jackson* v. *Cuerden*, 2 John., 363; *Jackson ex dem. White* v. *Ann Cary*, 16 John., 302; *O'Ferrall* v. *Simplot*, 4 Iowa, 381, which, it will be borne in mind, is a decision of our own court, since the one cited 2 G. Greene. Also, see *Elliott* v. *Pearsol*, 1 Pet., 328.

WRIGHT, J.—Four questions are suggested for our consideration. *First*, What estate had Catherine in the land? *Second*, What interest, if any, had the husband Peter? *Third*, How might Catherine make a valid title? And *Fourth*, If her conveyance as made was not valid, is respondent estopped from setting up his title as against complainant?

As to the first it is conceded that Catherine held the real estate in her own right, as permitted and contemplated by § 1, chap. 5, Acts 1846, p. 4; which provides, that a married woman may become seized or possessed of real estate by decent, demise, gift, purchase or distribution, in her own name and as of her own property, *provided*, the same does not come from her husband, nor is, nor has been purchased with the funds or property of the husband during coverture.

In the second place, the husband had no estate or interest in the land. Catherine bore no issue to the husband Peter.

The other inquiries are the important ones, and yet they really present but little difficulty. Was it necessary to the validity of the deed to Jordon, that the husband should have joined in its execution? This deed was made in October, 1848. By § 24, chap. 54, Laws 1843, p. 207, it is declared

that, " A married woman may convey any of her real estate by any conveyance thereof, executed by herself and husband, and acknowledged by such married woman, and certified in the manner hereinafter prescribed by some court, authorized by this act to take and certify such acknowledgments." And then by the 4th § of chap. 5, Laws 1846, above referred to, it is provided, that " the real estate owned by a *feme covert,* under the provisions of this act, may be sold by t'_e joint deed of the husband and wife, executed, proved and recorded agreeably to the laws now in force in relation to the conveyance of real estate."

These sections were in force at the time this deed was made, and it surely can not require argument to show that these, instead of recognizing the power of the wife to convey her real estate as a *feme sole,* establish and recognize directly the contrary rule. It is not claimed of course that the deed would be valid at common law. And there is certainly no foundation for such claim under these statutes. It is urged, however, that in equity the wife could thus convey property held in her own right. To sustain this position we are referred to 2d Story Eq. Jur. §§ 1378, 9, 88, and 90. An examination of these sections will show that the learned author is speaking of property settled to the seperate use of the wife by either ante-nuptial or post-nuptial agreements, with or without the intervention of trustees and the like, and not to cases where she acquires real estate during coverture or before, with no power of disposition as a *feme sole* ; for as to the latter estate he expressly says, she can not dispose of the fee from the heirs, except in the manner prescribed by law; as by fine, (under our statute by deed in which the husband joins,) " unless," says the author, " such an absolute power to dispose of the whole fee is conferred on the wife, she takes the estate in fee, subject to the ordinary disabilities resulting from her coverture. As her separate

estate her husband can not intermeddle with it; but her heir will take it by descent, as he would any other property vested in her fee." § 1392.

Nor does the case of *Greenough* v. *Wigginton & wife*, 2 G. Greene 435, in its actual facts and principles decided aid appellant. In that case the contract was made with the husband and wife for the erection of a house upon a lot owned by the wife, and the builder asked a mechanic's lien. His right to the lien was recognized. But that case is not this by any means. And yet there it is said, in giving a construction to chap. 5, Laws 1846, that "to carry out the spirit of this act the title to the land can only be affected by a contract with the wife as well as the husband." On the succeeding page of the opinion, it is true, we find this language: "As a necessary result of the principle, that a married woman may take and enjoy property to her separate use, equity enables her to deal with it as a *feme sole.* Such an interest and power, whether recognized in a court of chancery or created by statute, produce as an incident the right of disposition or appointment; the power to sell, pledge or incumber her seperate estate." But all this was mere *obiter dictum* and had nothing whatever to do with the case before the court. Not only so but it seems to us to be bad logic and bad law. *Non constat* that because a married woman may take and enjoy property to her seperate use, that "as an incident" to such power or interest she may sell, pledge or encumber it as a *feme sole.* The power to take and hold, and the manner of holding it, may be one thing, whether recognized in equity or conferred by statute, and the manner of disposition or appointment, quite another. And especially is this thought applicable when the very statute under consideration which gives the power to hold real estate as of her own property, expressly provides, that she can only dispose of it by their joint deed, and not as a *feme sole.*

Finally, is the respondent estopped by the action of his ancestor from setting up this title. This is claimed to result from the contents of the mortgage from Jordan to the mother, which conveys to her the fee simple subject to the condition of defeasance; it being insisted that by the act of taking this title, she confessed the validity of his title; that both husband and wife recognized the validity of the entire transaction by collecting the debt and receiving the proceeds. And the argumant is extended to the recitals in the deed to Jordan; complainant urging that the heir should not be permitted to gainsay the truth of what is therein contained. But to begin with the argument seems unsound which would estop the wife by recitals contained in a deed which she was legally incompetent to make and which possessed no validity. The predicate of this invalidity is her want of power to convey the estate without the husband's joining in the deed. Her title never was divested. During her life the title was perfect in her. Her acceptance of the mortgage would not preclude her from setting up her original title. For as she could not except in conjunction with her husband, by deed, dispose of the land, neither could she by the acceptance of the mortgage during coverture; a less solemn act; make valid that which before was void. Indeed it is difficult to see upon what principle the doctrine of estoppel can be applied to this case, and not with equal propriety to every case where the surviving widow claims as against a deed, for instance, defectively acknowledged. The writing signed by her, contains recitals, but the difficulty is that it is not her deed, and she is not to be bound by recitals contained in an instrument which in legal contemplation she never executed.

The action of the husband in suing for and collecting the purchase money, is of but little importance as against defendant's title. He inherits from the mother. The hus-

band could by no act of his divest the estate. He could not do so by his separate deed, nor can he by receiving the purchase money, make the title good in Jordan or those holding under him, which could only pass by the deed of the husband and wife duly and formally acknowledged.

Affirmed.