## Case No. 10,111.

### NELSON v. MOON et al.

[3 McLean, 319.] [1]

Circuit Court, D. Ohio. Dec. Term, 1843.

PRACTICE IN CHANCERY—WAIVER OF PROCESS BY APPEARANCE—GUARDIAN AD LITEM—NOTICE TO INFANT—RECORD AS EVIDENCE — PARTITION IN TWO COUNTIES—DECREE — PATENT FOR LAND COVERED BY PARAMOUNT TITLE.

1. Parties in chancery, or at law, may waive process and appear.

2. Regularly a notice should be served on infants, where the court appoints a guardian ad litem, and for this defect a judgment or decree may be reversed by a superior court.

[Cited in O'Hara v. MacConnell, 93 U. S. 152.]

[Cited in McAnear v. Epperson, 54 Tex. 220.]

3. But this objection cannot be taken collaterally.

4. When a record is used as evidence, presumptions are always favorable.

[Cited in Horner v. Doe ex dem. State Bank of Indiana, 1 Ind. 133; Horner v. Doe, Id. 11.]

5. The court of common pleas had power to take jurisdiction of a bill for partition in two counties.

6. But, to affect purchasers, the decree must be recorded in the county where the land lies.

7. Where a tract of land is lost in whole or part, the patent may be cancelled, under the act of congress.

8. The act under which this is done is remedial in its character, and just.

9. It is exerted only on the application of those who have lost land by a paramount title.

10. A patent for land covered by a paramount title does not vest the fee in the patentee.

At law.

Mr. Thompson, for plaintiff.
Mr. Foot, for defendants.

OPINION OF THE COURT. The facts in this case being admitted, it is submitted to the court without the intervention of a jury. The defendants pleaded the general issue, and under the rule of court have specified by metes and bounds the various tracts of land which they claim, and of which they have possession. A patent issued to Breckenridge for the land in controversy, and other tracts, the fifteenth of February, eighteen hundred and three, in all amounting to seventeen hundred and sixty-six and two-thirds acres. Robert Campbell was the owner of the warrants on which the locations were made by Breckenridge in his own name, and for which he was entitled to a moiety of the land. In 1833, Campbell filed his bill in the court of common pleas for Brown county, against the heirs of Breckenridge, setting up the contract of location, and praying a conveyance of a moiety of the land, and partition. Answers were filed, and a decree for a title and partition was made. In 1831, the patent to

Breckenridge was surrendered, and a new patent issued to the heirs of Breckenridge and Robert Campbell, for thirteen hundred and thirty-five and two-thirds acres—to Robert Campbell, in proportion of five hundred and thirty-eight to the whole tract. Prior to the issuing of the new patent, Campbell had conveyed to the defendants all his interest in the land, except one hundred and seventy acres, which he subsequently conveyed to St. Clair. By these conveyances the plaintiff contends, the defendants have acquired possession of more land than Campbell was entitled to, and this is the ground of controversy. Several questions on the foregoing facts have been raised and discussed.

The plaintiff contends, the proceedings before the court of common pleas of Brown county were void, for the following reasons: 1. There was no service of process on the parties. 2. The answers are not sworn to. 3. The land of which partition was made was situated in Brown and Clinton counties, over which the common pleas of either could exercise no jurisdiction.

As to the service of process. George C. Light was appointed guardian ad litem to two of the defendants, who were minors; and Mr. Collins, of counsel for the defendants, filed all the answers. Defendants in chancery, as well as at law, may waive process and appear; and this having been done in good faith, they are as much in court, and as much bound by its proceeding, as if they had been regularly served with process. But it is said that infants cannot waive process. The two infant defendants appeared by guardians ad litem, and it is objected that this was done without a notice having been served on the infants. If it be admitted, that for this defect in the proceeding the supreme court would have reversed the decree, yet it does not follow that the decree, when collaterally used, can be treated as a nullity. There was an appearance by a guardian specially appointed by the court to defend the suit, and the presumption will be in favor of the proceeding and not against it, when used as evidence. A judgment or a decree may be treated as a nullity, if it appear from the record that there was neither a service of process nor a waiver of it. But in the present case there was an appearance according to the forms of law, and that gave jurisdiction to the court. The objection, at most, is to an irregularity, which might be ground of reversal, but does not show a want of jurisdiction in the court. And this must be made clearly to appear, before the decree can be treated as a nullity.

The answers were not sworn to, but they were treated as sworn answers by the complainant in that suit, and an objection cannot now be made on that ground. Had an exception been filed to the answers for this cause, they would have been set aside; but no exception being taken, it was waived, and the decree can in no sense be affected by this

[1] [Reported by Hon. John McLean, Circuit Justice.]

omission. No doubt the pleadings were made up by consent.

A part of the land was situated in Brown county, where the bill was filed; and this gave jurisdiction over the land in Clinton county. If the decree of partition were not recorded in Clinton, within the time limited by the statute, the rights of a purchaser were not affected by it. But, as between the parties to the decree, it was valid under the statute. Was the first patent cancelled? This is the great question in the case.

The act of the 13th of May, 1800 [2 Stat. 80], provides: "That in every case of interfering claims, under military warrants, to lands within the Virginia military tract, when either party to such claims shall lose or be evicted from the land, every such party shall have a right, and hereby is authorised, to withdraw his, her or their warrant, respectively, to the amount of such loss or eviction, and to enter, survey and patent the same, on any vacant land within the bounds aforesaid, and in the same manner as other warrants may be entered, surveyed and patented." The surveyor of the district certified, that four hundred and thirty-one acres of the land patented to Breckenridge were lost by a prior entry. That of the land decreed to Campbell, one hundred and eighty-one acres were lost. This certificate bore date the 1st of December, 1830. The original patent was returned to the land office, on which the following indorsement was made: "Cancelled, 431 acres of land lost by a prior claim, as patented on the new survey, No. 3045, will be issued for 1335⅝ acres. The parties, R. Campbell, and the heirs of Breckenridge, claim scrip for the 431 acres lost by prior survey. December, 1831." And lines of the pen were drawn across the patent. The commissioner of the general land office states, "that where a tract of land, which had been patented, was lost in whole or in part, it was the practice of the land office to cancel the patent," as was done in this case. It is objected, that the law does not authorise the cancellation of the patent. It does not in terms, but such is the practice of the department, and it would seem to be a reasonable and proper practice, and one which, if not required by the words of the act, is fully justified by its substance and spirit. This, it is contended, would vest in the treasury department a very dangerous power. How is the power a dangerous one? It is treated as a power exercised against the rights of the original patentee. But such is not the character of the act. It is remedial, and only operates in cases where the person in interest makes special application for relief. Having lost his claim by a paramount title, in whole or in part, he obtains other lands from the government. The government might have withheld this relief. For a person who holds a Virginia land warrant, is bound to select vacant land, and if, through negligence, or want of knowledge, he locates his warrant on lands previously appropriated it is his own fault, and the government, strictly, is not bound to relieve him. But he is relieved by the above act, and it is just, and the act is fraught with no danger to the citizen. But it is said by the patent the fee passes out of the government to the patentee, and that this cannot be divested except by judicial decision. But the fact assumed here as to the fee is not true, and never can be true in an equitable sense. It is in fact only in cases where the patent does not convey the title, as the face of it purports to do, that relief under the act is desired. For it is only where the title, in whole or in part, is inoperative, that relief can be asked. And is it not strange that this should be considered a dangerous power? As the evidence on which the government acts under this law, and the mode by which the power is exercised, seems to be within the executive power to determine, it is not competent for the judiciary to prescribe the forms in which any executive power shall be exercised. It may determine whether such a power has been legally exercised. The action of the executive in the case must be considered prima facie, if not conclusive. If there has been fraud to the injury of third parties, it may be shown, and the proceeding may be held void. But there is no pretence of fraud. The cancellation of the patent must be held to have been for the benefit, as it was at the instance, of the parties interested.

From this view of the case, the lessor of the plaintiff, under the patent, has a legal right of recovery. Whether the defendant may not set up an equitable right under the partition, is not now before us.