## STATE OF IOWA;

## DES MOINES, JUNE TERM, A. D. 1867.

IN THE TWENTY-THIRD YEAR OF THE STATE.

---

PRESENT:

Hon. RALPH P. LOWE, CHIEF JUSTICE.
" JOHN F. DILLON,
" CHESTER C. COLE, } JUDGES.
" GEORGE G. WRIGHT,

---

## PURSLEY et al. v. HAYES et al.

1. **Husband and wife:** CONVEYANCE BY WIFE. A wife, with her husband, agreed with a purchaser, to sell him her interest in certain real estate, the consideration of which was, with the assent of the wife, received by the husband, who, at the time, executed a deed for the premises, but there was then no delivery of the same, nor did she, not being present, join therein; soon thereafter the husband died, and the widow, a short

time after his decease, duly executed and acknowledged the deed, which was then delivered to the purchasers. *Held*, that the payment of the consideration to the husband, with the knowledge and consent of the wife, and her voluntary execution and delivery of the deed after becoming discovert, had the effect of divesting her of the title.

2. Guardian: GUARDIAN'S SALE: STATUTE. Section 1508, Code of 1851 (Rev. § 2560), which provides that no person can question the validity of a guardian's sale of real estate after the lapse of five years from the time it was made, has no application to cases of appeal, writs of error, or other process bringing up the matter for review before an appellate court.

3. —— LIMITATION OF ATTACK. Nor was this provision of the statute intended to cover sales made by a person having no semblance of authority, or where the County Court had no jurisdiction of the parties or subject-matter and no possession was taken by the purchaser; and, in such cases, the heir would not be estopped by the statute from questioning the validity of the sale, though after the expiration of five years.

4. —— JURISDICTION: COLLATERAL ATTACK. Objections that are not jurisdictional in their character, but relate rather to the regularity of the proceedings, can not avail to invalidate a title derived through a guardian's sale, when raised in a collateral proceeding; especially when made, for the first time, after five years from the date of the sale, and when the purchaser took and held possession thereunder.

5. —— BOND: APPROVAL. A guardian's bond, made payable to the county instead of to the parties interested, is not thereby vitiated, but inures to the benefit of the latter, and suit may be brought thereon in the name of any one thus secured who has sustained any injury by a breach thereof. Code of 1851, §§ 2506, 1693; Rev.1860, §§ 4114, 2787. Nor will the fact that the bond is thus made payable, or the failure of the county judge to enter of record its approval, invalidate the title derived from the guardian's sale.

6. —— JOINT APPOINTMENT. There is no legal or reasonable objection against the appointment of one guardian for several wards jointly, and the giving of his bond in the same manner, where the wards hold by common title and as tenants in common.

7. —— SALE: JURISDICTION. In a proceeding by a guardian to sell the real estate of his wards, the notice was directed to the wards, naming each of them, and was thus served, while the petition only described them as "the minor children of Hugh Pursley, deceased." *Held*, that this was not a jurisdictional defect that could be urged in a collateral proceeding to defeat the title of a purchaser at the sale; especially where it appeared as a matter of fact that the heirs named in the notice

Pursley v. Hayes.

were the *only* minor heirs, and the whole record showed that they were sufficiently named and described.

8. Jurisdiction: INFERIOR COURTS. If the jurisdiction of inferior tribunals has once attached, every intendment will be made in favor of the validity of all its subsequent proceedings, and mere irregularities or defects will not avail in a collateral proceeding. The power to decide being shown is not lost because erroneously exercised.

9. —— RECITALS OF RECORD. If a guardian's petition to sell the real estate of his wards alleges the requisite jurisdictional facts, it is not necessary that the records of the County Court should recite in detail the facts upon which the ultimate and essential conclusion was based.

10. —— SALE: SERVICE OF APPLICATION. Under the Code of 1851, section 1721, and chapter 133, it was not necessary that a copy of the petition and notice, in a guardian's proceeding to sell the real estate of his wards, should be left with the minors unless demanded; and where, in a collateral proceeding to impeach the validity of a guardian's sale made several years before, the application and notice, with the return of the officer indorsed thereon, were found attached, it was held to be fairly inferable, that they were treated as constituting one paper, and so served and covered by the return of the officer.

11. —— SERVICE AND RETURN: PRESUMPTION. A court will not presume that an officer, in the service of process, failed to discharge a plain duty imposed upon him by law; or infer facts inconsistent with his return in order to divest rights acquired under it, or defeat the judgment of a court of competent jurisdiction.

12. —— COLLATERAL ATTACK. Where there is a notice and return of personal service, a defect in it which the tribunal before which it was returnable has held and treated as immaterial, can not, in view of the language of the statute (Code of 1851, § 2512; Rev. 1860, § 4120), and following the current of authorities, avail to defeat a title in a collateral proceeding. *Cooper* v. *Sunderland*, 3 Iowa 114, and *Morrow* v. *Weed*, 4 Iowa, 77, followed and approved.

13. Conveyance: DESCRIPTION: UNCERTAINTY. A grant is not void for uncertainty, if the court can imagine testimony which would show any particular monument to be that which is called for in the grant; and when the land, included in a guardian's proceedings to sell, had been previously surveyed and platted into lots, a copy of which plat was made a part of the record in the case, and one of the deeds described by metes and bounds, 2¼ acres of one of these lots, and referred to the lot as "lot (1) one in the survey of said lands, being a part of the S. E. ¼ Sec. 5 T. 78 N. R. 24 W. 5 P M.;" and the other deed referred to the

same survey by its date, and conveyed all of said lot (1) after excepting, by metes and bounds, the parcel previously conveyed, it was *held*, that this was a sufficiently certain description of the premises.

*Appeal from Polk District Court.*

WEDNESDAY, APRIL 3.

THIS case was before this court at the December Term, 1864, upon plaintiffs' demurrer to one division of defendants' answer. The order of the court below, overruling the demurrer, was affirmed; and the case has since been tried upon its merits. During the progress of the trial, various questions were raised by plaintiffs (appellants), all of which they now urge upon our consideration. An opinion was announced at the June Term, 1865, adverse to appellants, and a rehearing granted upon their application. The case has been again very fully and ably argued upon the questions heretofore raised, as well as some new ones, all of which will sufficiently appear in the opinion.

*B. N. Kinyon* and *Thomas F. Withrow* for the appellants.

*C. C. Nourse* for the appellees.

WRIGHT, J.—This controversy relates to one hundred and thirty-three acres of land, within the corporation limits of the city of Des Moines, many parts of it now covered with costly and valuable improvements. It once belonged to Hugh Pursley, deceased. Plaintiffs are his heirs (children), and are entitled to recover, unless their title has been divested by certain conveyances made by one of them in person, and by the other through their alleged guardian, John C. Jones. So that we may confine our examination to these alleged conveyances and their effect upon plaintiffs' title.

Pursley v. Hayes.

The deed made by one of the heirs (Mrs. Deford, formerly Mrs. Carr), as the questions made upon it have no kind of connection with the other parts of the case, may be considered by itself, and will first receive attention.

1. HUSBAND AND WIFE: conveyance by wife.

She was married to Carr, March 11, 1848 ; was twenty-one years of age, August 12, 1851 ; her father died April 23, 1850, and her husband, December 23, of the same year. In November, 1850, she, with her husband, agreed with her uncle (West), to sell to him her interest in the real estate in controversy, with other tracts, for about three hundred dollars, to be paid in horses, a wagon and some other property. They then resided in Dallas county, and it was then agreed that the husband should come to Des Moines, get the property, sign the deed, and that the wife would do so the first time she was down. He signed and acknowledged the deed, obtained the property, a part of it was left at his death, which the wife took into her possession and disposed of for the use of herself and family.

On the 21st of July, 1851, she signed and acknowledged the deed, and it was then delivered to the grantee and duly recorded.

There was some effort to show that she executed the deed under duress, or that West was guilty of fraud in obtaining her signature.

The testimony, however, most signally fails to establish either claim. There was apparently the utmost fairness, the most perfect honesty throughout the entire transaction. A verdict in her favor upon this ground should have been instantly set aside, as against evidence.

The argument, as we understand it, however, upon which her counsel rely, is this : Carr conveyed his interest and received the consideration. This was effectual to pass his interest, and no more. The wife was not bound

by any agreement with the husband during coverture, either to sell, or execute the deed; there was no consideration passed to her as a *feme-sole*, nothing to give the deed, as to her, validity; and it was therefore void. It is further insisted that the instrument was either the deed of Carr and wife, or her deed as a *feme-sole*; if the former, it is defectively acknowledged; if the latter, it is not supported by a consideration; that there was no new contract, no new delivery as her deed.

Thus, somewhat at length, we have stated, as we believe fairly, the substance of appellants' position.

Treated as the deed of a *feme-covert*, it is conceded that the acknowledgment is defective. The deed had never been delivered as the deed of Carr and wife, or either or both of them, at the time she signed and acknowledged it. At this time she was a *feme-sole*, and, as such, the acknowledgment is sufficient; and it was then, for the first time, delivered. What, then, is there to impair or affect its validity? There was no consideration, it is said. Suppose she had agreed, during coverture, to convey upon the payment of so much money, and the money had been paid to the husband. After his death, in accordance with her agreement (existing in parol), she does convey. Could she be heard to assert the want of consideration? In such a case she but executes her agreement, and the payment to the husband (and especially when made with her knowledge and consent) is a payment to her, and the consideration becomes effectual. It is not as though she had undertaken, during coverture, to convey jointly with her husband, the acknowledgment being defective; for then her rights are saved, not because of the want of consideration, but because the formalities required by law, and the observance of which were essential to bind her as a *feme-covert* were neglected. Nor is it like the case of *Miller* v. *Wetherby* (12 Iowa, 415),

where, under the statute of 1843 (ch. 54, § 24), the conveyance of the wife of her own land during coverture was held invalid, because the husband did not join in the conveyance. Then, again, the law required the conveyance to be made in a certain manner, and because it was not complied with, the title failed.

If the wife had joined with the husband, at the time he signed the deed, and had duly acknowledged the same, there could be no question as to its validity, though the entire consideration passed into his hands, or under his control. Now, as there was no delivery of the deed, when executed by the husband, and when he received the consideration, but as she did, after she became discovert, duly acknowledge and then deliver the same, the title, in our judgment, as effectually passed as though she had properly joined with the husband during coverture. There can be no doubt of this proposition: If she had joined in the deed during coverture, but under such circumstances as rendered it invalid (because defectively acknowledged, for instance) and the deed had been delivered, she could have made it effectual, by redelivery, after she became discovert. This doctrine is expressly asserted in the authorities most confidently relied upon by the appellants' counsel (*Miller* v. *Shackelford*, 3 Dana, 289; Perkins' Treat., 154), and of its correctness there can be no doubt. The redelivery being shown in such cases, there remains no question as to the state of the title; and if, instead of a redelivery, the wife after she becomes a *feme-sole*, for the first time undertakes to, and does actually execute and deliver the deed, the case is still stronger in favor of the grantee. Upon this subject, generally, see *Hill* v. *West*, 8 Ham., 222; *Goodright* v. *Strapham*, Cowp., 201; *Duncan* v. *Hodges*, 4 McCord, 239; *Hudson* v. *Revett*, 5 Bing., 388; *Grout* v. *Townsend*, 2 Hill, 554; *Waring* v. *Smith*, 2 Barb. Ch., 119; *Ellerin*

v. *Ellerin*, 6 Ves., 662 ; *Jackson* v. *Bull*, 1 John. Cas., 90 ; *Bunn* v. *Winthrop*, 1 John. Ch., 329 ; *Doe* v. *Howland*, 8 Cow., 277. To support a contract (and especially a deed) it is not necessary that the consideration should move to the grantor or promisor. If paid to another, it is just as effectual, and especially when thus paid at the instance of the grantor ; and, therefore, without stopping to inquire whether this deed would not be good, as between the parties, and conclusively so, though there was no consideration (it was made before the taking effect of the Code of 1851), waiving all questions under the statute of limitations, passing also the effect of the use and possession, by the wife, of the property received for the land after the husband's death, not as administratrix, but apparently in her own right, as also the point that defendants took title without knowledge of such alleged want of consideration, — we say, without giving weight to any of these considerations, we unite in the opinion that the payment of the consideration to the husband, with the knowledge and consent of the wife, and her voluntary execution and delivery of the deed after becoming discovert, had the effect of divesting her title, and that to this extent the judgment below was right.

Turn we now to the other and more important branch of the case. Besides Mrs. Deford, Hugh Pursley left seven children, him surviving, and all minors, their names being Jacob, William, Eliza, Rachel, Elizabeth, Armanda and Mary. This action was commenced in July, 1863, the said Armanda and Mary still being minors, but attaining their majority before the trial thereof, in February, 1865. It is claimed, that John C. Jones was, on the 7th of June, 1852, appointed, by the County Court of Polk county, guardian of the estate of said minor children, and that, after due application and under an order of said court, he sold the real estate in controversy at public

Pursley v. Hayes.

outcry to certain parties, under whom defendants claim, in September, 1852.

Defendants introduced the deeds made by the guardian, with the approval of the county judge indorsed thereon, omitting any reference or evidence, documentary or otherwise, showing the authority to thus convey, and, with some other testimony as to possession and the like, not necessary now to mention, rested their case. To the introduction of the deeds, plaintiffs, at the time, objected upon various grounds ; but the objections were overruled, and the deeds admitted. As plaintiffs afterward offered to introduce all the records upon which the authority to sell was based, and as the consideration of the points made thereon necessarily involve most if not all of those made against the introduction of the deeds, brevity will be consulted by turning our attention to these records and those alleged defects. For it will be seen at once, if in view of these records (all embodied in the bill of exceptions) plaintiffs cannot now successfully impeach the sale, it becomes immaterial to consider whether the court did or did not err in admitting the deeds without preliminary proof. And if these records are in such a condition as to render invalid defendants' title, plaintiffs' rights are equally protected as though the deeds had been rejected until such proof was made.

It is idle, indeed it is a misuse of terms, to insist that the sale by the guardian was "no sale." He *did* sell the property ; he *did* sell as guardian, at least, under a semblance of authority; and it is not like the act of a mere volunteer, selling without right, without an order, and without any effort or pretense of effort to obtain authority therefor. He did undertake to comply with the requirements of the law, and he was acting under the direction and control of a court to which the cognizance of such matters is intrusted by the statute. And it will therefore

be seen at once, that the questions involved cannot be very unlike those heretofore frequently passed upon by this court. And as counsel have referred to them, commented upon them, and, in some instances, indirectly if not directly, challenged their correctness; and, as we may have occasion to refer in the course of this opinion to the principles recognized by them, we here group and cite most if not all those in this State, bearing upon the many points made. And we do this the more unhesitatingly, as we desire, if possible, to so dispose of the objections made as that heirs and purchasers may the more certainly know their respective rights and obligations.

In the following cases the property was sold by the administrator, and the questions arose in a collateral proceeding: *Morrow* v. *Weed*, 4 Iowa, 77; *Long* v. *Burnett*, 13 Id., 28.

And in the following the proceedings were direct to set aside sales made by administrators: *Little* v. *Sinnett*, 7 Iowa, 324; *Van Horn* v. *Ford*, 16 Id., 578; *Thornton* v. *Mulquinne*, 12 Id., 549.

Cases under guardian's sale, where the question arose collaterally: *Frazier* v. *Steenrod*, 7 Iowa, 339; *Cooper* v. *Sunderland*, 3 Id., 114.

Where the proceeding was direct: *Wade* v. *Carpenter*, 4 Iowa, 361.

Sales by sheriff and trustees collaterally attacked: *Bosworth* v. *Farenholz*, 3 Iowa, 84; *Cavender* v. *Heirs of Smith*, 1 Id., 306; *S. C.*, 5 Id., 157; *Bowen* v. *Lamb*, 4 Gr., 468; *Shaffer* v. *Bolander*, Id., 201; *Johnson* v. *Carson*, 3 Id., 499; *Sprott* v. *Reed*, Id., 489; *Burton* v. *Emerson*, 4 Id., 393; *Hopping* v. *Burnam*, 2 Id., 39; *Corriell* v. *Doolittle*, Id., 385; *Seely* v. *Ried*, 3 Id., 374; *Humphry* v. *Beeson*, 1 Id., 199; *Thatcher* v. *Haun*, 12 Iowa, 303; *Dutton* v. *Cotton*, 10 Id., 408; *Bank of Old*

*Dominion* v. *Dubuque & Pacific Railroad Company*, 8 Id., 277.

When the attack was direct: *Leffler* v. *Armstrong*, 4 Iowa, 482; *Bridgman* v. *Wilcut*, 4 Gr., 563; *Coriell* v. *Ham*, Id., 455; *Cole* v. *Porter*, Id., 510; *Ralston* v. *Lahee*, 8 Iowa, 17; *Grapengether* v. *Fejervary*, 9 Id., 163; *Singleton* v. *Scott*, 11 Id., 589; *Boyd* v. *Ellis*, Id., 97; *Sypher* v. *McHenry*, 18 Id., 233; *Penny* v. *Cook*, 19 Id., 538; *Langworthy* v. *Campbell*, Id., 568; *Lowe* v. *Grinnan*, Id., 192; *Boker* v. *Chapline*, 12 Id., 204; *Sears* v. *Livermore*, 17 Id., 297; *Hodson* v. *Tibbetts*, 16 Id., 97.

Sale for delinquent taxes, direct: *McGahen* v. *Carr* 6 Iowa, 331.

Collateral: *Scott* v. *Babcock*, 3 Gr. 133; *Laraby* v. *Reid*, Id., 419; *Gaylord* v. *Scarff*, 6 Iowa, 179; *Bleidorn* v. *Abel*, 6 Id., 5; *Rayburn* v. *Kuhl*, 10 Id., 92; *Abell* v. *Cross*, 17 Id., 171; *Allen* v. *Armstrong*, 16 Id., 508; *Boardman* v. *Bourne*, 20 Id., 134.

There are still other cases, such as *Broghill* v. *Lash*, 3 Gr., 357; *Carr* v. *Kopp*, 3 Iowa, 80; *Wheeler* v. *Edinger*, 11 Id., 409; and *Bristow* v. *Guess*, 12 Id., 404, where, upon appeal, it was objected that there had been no sufficient service; and still others, like *Gladson, Admr.*, v. *Whitney*, 9 Id., 267; *Smith* v. *Dubuque Co.*, 1 Id., 492, where the objections related to the jurisdiction, growing out of the subject-matter of the litigation, which in their reasoning are somewhat applicable to the present discussion. But those before cited, with the numerous authorities therein referred to, cover the whole ground, and those of the latter class need not therefore demand more particular mention.

And now, before discussing or stating the principles recognized by these authorities, let us state the facts of this case, so far as they are urged by plaintiffs, to invalidate this sale.

June 7, 1852, the record recites that Jones was appointed guardian of the property of "William, Eliza, Rachel, Elizabeth, Armanda and Mary, minor heirs of Hugh Pursley, late of Polk county, Iowa, deceased." In this record, it will be observed that the name of Jacob is omitted. The guardian's bond, however, includes the name of Jacob, as well as the other heirs, and obligates him to faithfully discharge his trust as to his property, as well as of all the others. On the 17th of June, 1852, he filed his petition to sell the real estate of said minors, not setting forth their names, but describing them as "the minor children of Hugh Pursley, late of said county (Polk), deceased;" and on the 23d of the same month he made application for letters of guardianship, as to the said Jacob, and that he be included in the petition to sell the real estate, and in the order of the court made in the premises; and the record recites that "the application, being duly considered, is granted; thereupon the said Jones gave bonds and qualified according to law."

Upon the presentation of the petition, it was ordered (the order reciting the names of five of the heirs, omitting Jacob and Mary, but still adding "minor heirs of Hugh Pursley deceased") that it be heard at the next term, and that a copy of the petition and notice of the time of hearing be served upon said minors. At the July Term (5th), the further hearing was continued to the August Term. The notice to the heirs, attached to a copy of the petition, was directed to all of the heirs by name, and notified them that, on the 5th of July, application would be made to sell the land described in the within petition. As to the correctness of this description, there is no question. The officer's return is that, on the 18th of June, he "served the above notice by reading it to the above named William and Jacob Pursley, etc. (giving all their names), minor heirs of Hugh Pursley." August 3d, 1852, the petition

was heard, and the order recites: "Now comes J. C. Jones, guardian of the minor children of Hugh Pursley, deceased, and the matters and things contained in his petition, etc.  *  *  upon full consideration it is ordered and adjudged that the guardian proceed to sell, etc., on the second Monday in September, 1852, at public outcry, etc." September 11, 1852, the guardian made his report of the sale to the County Court, setting forth the sale of the several tracts of land, giving them by numbers (as lot one, of so many acres, etc.), the person to whom sold, and for what price. This report was approved in due form by the court. Deeds were made by the guardian, to the parties under whom defendants claim, on the 25th of July, 1854, approved by the county judge February 28, 1854; and on the 5th of November, 1855, approved the same day. Neither of these deeds described the heirs by name, but described the property as belonging to "the minor heirs of Hugh Pursley, deceased." It is claimed that the conveyances were void for want of certainty in the description of the land, which will be noticed hereafter. The guardian's bond was made payable to Polk county, and before making the sale he gave bond as required by section 1504, of the Code of 1851 (Rev., 2556), properly conditioned, but payable, like the other, to Polk county, Iowa. The guardian's oath is for the faithful discharge of his duties under his appointment, for all the heirs, naming Jacob, as well as the others; and was taken June 7th, 1852. The first bond describes all the heirs by name; the second refers to his application, and describes the land as "belonging to the estate of Hugh Pursley, deceased." The plaintiffs proved that defendants were in possession continuously for six years before the commencement of this suit, and defendants established that improvements were made, and this possession commenced in 1854 or '5. As before stated, this action was commened July 15, 1863.

To the objections made to the validity of this sale, appellees make two answers: First, that there was no such irregularities as can affect their title. Second, that by the statute (Code, 1508; Rev., 2560) it is too late to question its validity.

2. GUARDIAN:
guardian's
sale: statute.

The statute referred to is as follows: "No person can question the validity of such sale after the lapse of five years from the time it was made."

Appellants insist that the statute has reference to voidable and not void sales, and is only applicable to appeals or writs of error, or some process bringing up the matter for review and reversal in a superior court.

The latter part of this proposition is most clearly untenable. If true, it gives five years after the sale to prosecute an appeal from the action of the County Court; whereas, we have a general statute (Code, § 131; Rev., § 267) expressly requiring such appeals to be taken within thirty days, and pointing out specifically the manner of taking the same. And upon no tenable or reasonable ground can it be claimed that section 1508 was intended to modify, change, or affect that relating to appeals. The remedy by appeal is provided for by section 131, of the Code (in force when this sale was made and approved), and it would violate every rule of construction to hold that this subsequent section, which says nothing about appeals or writs of error, which is not treating of that subject, was intended to extend the time, or give any different rule. There is nothing in the language justifying any such conclusion. To "question the validity of such sale," implies a proceeding other than by appeal. An appeal ordinarily brings before the court only the parties to the proceeding; in this case, the guardian and the ward. The purchaser would not be a party to such an appeal. This language, however, indicates the questioning of *the sale*, a proceeding against the purchaser, an attack upon his title. Than

this nothing can be clearer. And this construction is impliedly if not directly recognized in *Cooper* v. *Sunderland* (3 Iowa, 121), and the case of *Vancleave* v. *Milliken* (13 Ind., 105), arising under a very similar statute, is entirely untenable if appellants' position is correct.

But let us advance one step further. There are two other classes of cases to which this statute might be made 3. —— limita- applicable. One where the County Court had tion of attack. no jurisdiction, the other, where, having jurisdiction, the court or guardian failed to comply with the provisions of the statute in ordering, conducting, or confirming the sale.

There is a very clear distinction between a sale by a person not a guardian, with no pretence of appointment or authority to sell—a mere volunteer acting upon his own motive—and a sale by one duly appointed, who fails to comply with all the provisions of the statute. In the former case we should be very clear that section 1508 would not estop the heir from questioning the validity of the sale; for it is sales made by one having at least the semblance of authority which are intended to be covered by the statute. And if made by one having no authority, nor the semblance thereof, it does not come within either the letter or spirit of the statute. To thus extend the meaning of the statute, would render it, we think, justly obnoxious to the objection made by counsel, of being in conflict with the Constitution, which secures the individual in his property until taken from him by due process of law. For if the heir, after five years (without reference to the question of possession), is concluded by a sale made by one acting entirely without authority, or the pretense thereof, then we know of no clearer case of judicial legislation; no case which would more flagrantly violate the fundamental provision securing

all persons in life, liberty and property. This then was not the meaning of the statute.

But suppose the guardian is acting under a proper commission, and makes a sale without any notice, or pretense thereof, to the heir; that the whole proceedings are conducted without giving or attempting to give him a day in court; that the purchaser does not enter into possession of the property, but the heir retains the same undisturbed, and, after five years from the time of the sale, the heir, directly or collaterally, attacks the same, will this statute protect the purchaser? In other words, in such a case, could he use it as a weapon to take from the heir his inheritance? We clearly think not. For this, instead of making the statute one of repose, one to protect and shield the purchaser in his possessions, would, in legal effect, deprive a party of his property, without notice, without due process, without the existence of that adverse possession which might impose upon him the duty of action, or the taking of some step before the expiration of five years. It is very clear to our minds, that if the heir had no notice, and hence the court no jurisdiction, and no possession was taken under the purchase, the purchaser could not use the statute to protect him in his title. For if so, then, if the ward remained in possession notoriously, adversely and uninterruptedly, for ten years, the statute, which prohibits him from questioning the validity of the sale after the lapse of five years from the time it was made, would prevent the bar of the general statute on his part, and become an oppressive weapon on the part of his adversary, instead of a shield to protect him in his possession and purchase; and that the latter was the intention of the legislature, is, we think, most clearly inferable from the plain language of the enactment.

Thus far, we have had no difficulty. Take the case,

Pursley v. Hayes.

however, where there was no notice, and hence no juris-
diction, but where the purchaser takes possession and
keeps it for more than five years from the date of the sale,
will this statute estop the heir from questioning the validity
of such sale? If so, then is it not because the party is to
be treated as in possession, under color of title, and hence
protected against the attack? And yet, it would seem
anomalous to say that another could obtain color of title
to my property without notice to me of the proceedings
upon which he bases his claim. True, it is said that if
the statute does not cover such a case, then there is noth-
ing to which it can apply. For, the argument is, if these
were mere irregularities, not matters jurisdictional in their
nature, tending to impeach the sale, the purchaser is pro-
tected as well before as after the five years, and hence
this section would be without meaning or force. And
yet, it seems to us that this argument is not entirely
sound. Before the expiration of the five years, cases can
be readily imagined where the sale might be directly but
not collaterally attacked, whereas after the expiration of
the time neither method of attack would avail. Nor
would the grounds of such attack be jurisdictional in
their nature. Thus, suppose a bill should be filed attack-
ing the sale for fraud — combination between the guardian
and the purchaser to defraud the ward. While the ward
might sue the guardian on his bond, he would certainly
not be limited to such remedy. And yet every provision
of the statute might have been complied with, no ques-
tion of jurisdiction arising. Such an attack, direct in its
nature, might be made before five years, and yet not
after that time. And thus, as it seems to us, many cases
might be supposed to which the statute might apply,
without going so far as to protect a title when there
was no jurisdiction or power in the court to order the
sale.

We would not be understood, however, as passing positively upon this statute, when applied to a state of facts last supposed. This much we have deemed it proper to state, as suggesting possible, not to say probable, difficulties, before turning to another and final view of the case before us.

Defendants were in possession of this land for more than five years from the time of sale. The statute makes no saving on account of the nonage of the heir or party attacking the sale. The objections made arise in a collateral and not a direct proceeding. If the court had jurisdiction of the parties and subject-matter at the time of the ordering and confirming the sale, then we are very clear this case was decided right. For concede, that, if there was no jurisdiction, the purchaser would not be protected, we have no hesitation in holding that he would be when the questions made are not jurisdictional, and especially in a collateral proceeding. This proposition is in effect admitted by appellants, and hence we need not elaborate it, nor cite authorities in its support. For while it is claimed that all judgments and proceedings where there was no jurisdiction over the parties and subject-matter are void, and may be avoided collaterally, it is, at the same time, admitted that those voidable merely cannot be thus attacked.

4. —— jurisdiction: collateral attack.

Turn, then, briefly to the facts of this case. The objections to the validity of the proceeding are: First, there is no sufficient caption to the County Court record. Second, no legal appointment of Jones, as guardian, for want of power to appoint for seven heirs jointly. The bond is joint, and hence is void. It is payable to the county and is not approved, so far as shown by any recitals of record. Third, the petition did not set out the names of the minors, and hence there was no jurisdiction. Fourth, the

order on filing the petition is *coram non judice.* Sixth, a copy of the petition was not served on the minors. Seventh, there was no guardian for Jacob when the petition was filed and notice served. Eighth, the final order recites no jurisdictional facts, and especially omits the essential fact upon which it rested, to wit: the *necessity of the sale.* Ninth, no bond was given to execute the sale, that is, it was void upon its face and was not approved by the court of record.

These objections we do not propose to discuss *seriatim.* A general reference to them, it seems to us, will be sufficient to show that none of them go to the vital question of jurisdiction, except the sixth, which relates to the service. All the others relate rather to the regularity of the proceedings than to the question of power. And, once for all, let it be understood that such objections cannot avail to invalidate a title, when raised in a collateral proceeding, and especially when made for the first time after five years from the time of the sale, and where the purchaser took and held possession thereunder. Every case in this court hereinbefore cited enunciates this principle, and not one can be found in conflict.

What are these objections other than the sixth? Take the one that these bonds (the one for the guardianship and to sell) were made payable to the county. The law does not, in terms, direct to whom such bonds shall be made payable. Code, §§ 1496, 1504. It would be better, of course, to make them payable to the parties interested; but the statute expressly declares that a mistake in this respect will not vitiate the security. Code, § 2506. And, further, that if a bond, given to a county, is intended for the security of any particular individual, suit may be brought thereon in the name of any one thus secured who has sustained any injury by a breach thereof. § 1693. And see *Charles* v. *Haskins* (11

5. —— bond: approval.

Iowa, 329). And, then, as to their approval, the law does not declare that such approval shall be entered of record. The power to sell would certainly not be affected by a failure to make such entry. Bonds were given, the proper oath taken, and these were found as a part of the proper record in the case. One of them had the county judge's order of approval indorsed on it, and while the other did not have, this failure could not invalidate the title derived from the sale. No case can be found among all those cited which, by analogy even, treats this as a jurisdictional defect.

And the same may be said of the want of caption to the County Court record. What is meant by this, we do not exactly understand. Every entry in the County Court records seems to be preceded by the date of the entry, and sufficient to show that it was made in the proper County Court. So the petition is directed to the proper tribunal, and in these respects we can see no departure from even the most technical rule.

Next, is the objection that the guardian was appointed for the wards jointly, and the bonds are for their security 6. —— joint in the same manner. The record discloses appointment. that these lands constituted the entire property of these minors. Each ward did not have property in his own right, distinct from the others. They all held by a common title, as tenants in common. And certainly nothing has been more common in our practice than to appoint one guardian for all minors thus interested, and no rule of the statute can be found forbidding it. True, the guardian ought to keep his account with each ward separate and distinct. And this is all that is held in this respect in the case of *Foteaux* v. *Lepage* (6 Iowa, 123), to which counsel so frequently refer. But a failure on the part of the guardian to comply with his duty in this respect would not invalidate a title held under a sale

made by him. And we may be allowed to add that, where property is held as in this instance, economy and a sound discretion would dictate that the trust should be imposed upon one instead of upon several persons. We fail to see any legal or reasonable objection to such a practice.

But it is said that the petition does not set out the names of the minors, and hence there was no jurisdiction; that there was no guardian for Jacob Pursley, when the petition was filed, and hence his title was not divested by the sale; that the order filing the petition was *coram non judice ;* that the final order recites no jurisdictional facts, and especially omits the essential fact that there was a necessity to sell.

7. —— sale: jurisdiction.

If this application is to be treated as an original action in the County Court, we might concede that a petition against the "minor heirs of Hugh Pursley, deceased," without more, and a notice in the same form, would be ineffectual to confer jurisdiction. This is certainly the substance of the ruling in *Reynolds* v. *May* (4 Green., 283), and *Steamboat Pembinaw* v. *Wilson* (11 Iowa, 479). And, though, in those cases, the objection was made on appeal, the reasoning used goes to the extent stated.

In this case, however, the notice was to the heirs, by name, and was served upon each.

The order of appointment, as amended, was alike specific in naming the heirs.

The proceeding was not commenced against them as the "minor children of Hugh Pursley, deceased;" but the petition uses this language merely as descriptive of the relation of the said Jones to the property, and those having an interest in it. It is as though he had brought an action in his name, "as guardian of William Pursley, etc." (giving the names of all the heirs), and the petition had omitted the names, but described them in an abbre-

viated form, as the children of the party from whom the property was taken by descent. In such a case, there would be no good ground for claiming that this defect in the petition was jurisdictional, nor that one, holding under the judgment, could be defeated in his title. No more can there, in this; and especially where, as a matter of fact, those named were the only minor heirs, and the whole record discloses that they were sufficiently named and described.

That the name of Jacob was not entered with the others in the order of appointment, we give but little weight. It was manifestly a mere clerical omission, for the bond includes his name with the others. The subsequent proceedings were entirely regular, for the order made, but carried out what was originally intended. The petition to sell included all; the bond was for the benefit of all; and, to obviate all question, the order made, in terms, included him. As suggested, this hardly seems to us irregular, and it certainly was no more. The purpose intended, to make him a party to the proceeding, was sufficiently accomplished, and, beyond this, we will not inquire in this action. *Doe* v. *Smith*, 1 Ind., 458.

Upon filing the petition, the County Court ordered how service should be made, and that the same should be heard at the next term thereof. This was just what the law contemplated (Code, §§ 1501, 1502), and why it is insisted that such order was *coram non judice* we cannot imagine.

So of the final order to sell. The petition alleged the requisite jurisdictional facts, and the truth of these averments was necessarily found in making the order; for it was after a hearing and upon a full consideration of the petition that the sale was ordered. It never has been required in this State that the records of these inferior tribunals should recite in detail the facts

8. —— recitals of record.

Pursley v. Hayes.

upon which the ultimate and essential conclusion was based. And see *Railroad Company* v. *Stimpson*, 14 Pet., 448; Code, § 2512.

And that this general disposition of these several points accords with principle and authority, sufficiently appears from the foregoing cases and rules.

The County Court is, we admit, a court of limited and inferior jurisdiction. However like a court of general jurisdiction, every intendment will be indulged in favor of its acts, when acting within the scope of its power. That is to say, if jurisdiction has once attached, then the presumption obtains in favor of all the subsequent proceedings; and mere irregularities or defects will not avail collaterally. Thus, as to a defect in a petition, if it relates to a proper subject-matter, so as to invoke legitimately the action or jurisdiction of the court, its sufficiency in a collateral proceeding cannot be called in question. The right to decide is one thing, and the decision itself quite another. For the right to decide arises only when there is jurisdiction; and, unless it exists, no right can follow from it. But, the right existing, error of decision may be corrected, but it cannot reach forward and affect those who have in good faith relied upon its correctness. *Perrine* v. *Farr*, 2 Zab., 356.

9. JURISDIC-
TION: inferior
courts.

Thus, the power to decide being shown, this power is not lost or taken away because it may be improperly exercised. And hence, if the parties are properly in court, that these names are ordered to be inserted in a petition already filed, instead of filing a new petition; that there was a defective bond, either in the amount or formal conditions, received and accepted as good, however, by the court; that there may have been error in the conclusion reached upon the facts shown, all these and similar matters must be accepted as absolutely conclusive in a collateral proceeding; and this, whether the court is

one of limited and inferior or general and superior juris-diction. *Brown* v. *Wood*, 17 Mass., 68; and the well known case of *Grignon's Lessee* v. *Astor*, 2 How., 319; *Lampson* v. *Platt*, 1 Iowa, 556; *Thompson* v. *Tolmie*, 2 Pet., 157; *Morrow* v. *Weed*, 4 Iowa, 77; *Perkins* v. *Fairfield*, 11 Mass., 227; and see *Elliott* v. *Piersol*, 1 Pet., 328, referred to by counsel, and sometimes thought to be in conflict with the foregoing authorities; but in which it is said "that, when a court has jurisdiction, it has a right to decide every question that arises in a case; and, whether its decisions be correct or not, its judgment, until reversed, is regarded as binding on every other court." See also *McPherson* v. *Canliff*, 11 S. & R., 427; *Bangs* v. *Duckingfield*, 18 N. Y., 592; *Knowles* v. *City of Muscatine*, 20 Iowa, 248.

. It must not be forgotten that, to the County Courts, at that time, as now, were given the power to appoint guar-dians, and to exercise a general supervision over their property, person and interests. Code, § 1273. So far, therefore, as the subject-matter was concerned, the juris-diction was expressly given; and, if not exclusive, was at least general. If the matter to be adjudicated was brought before it by a proper petition or complaint, and the parties to be affected thereby were duly notified thereof, then, by an unbroken series of decisions in this State and elsewhere, while an appellate tribunal might correct errors thereafter intervening, there is no power to inquire into them collaterally. See the cases before cited in this State, where the authorities are fully collected, and, particularly, *Wright* v. *Marsh, Lee & Deluvan* (2 Green, 94).

In a word, the decided current if not uniform weight of the authorities, leads us to ask : First, did the court have jurisdiction of the subject-matter? Second, of the parties? and, if so, the judgment, in the absence of fraud,

Pursley v. Hayes.

becomes conclusive, and can in no manner be impeached collaterally. And all efforts to insist upon errors or irregularities to thus impeach, are without warrant, and without the support of respectable precedent.

The party purchasing has a right to rely upon this conclusiveness of the judgment, and it would, we feel bound to say, unsettle half the titles in the State (and that greatly to the prejudice of infants and their estates) to innovate upon this well established and most reasonable doctrine. Let the guardian be held to strict accountability for his fraud or negligence or any conduct tending to the prejudice of his ward. Make him and his sureties respond promptly and adequately in damages; but it would, in our opinion, be as disastrous to the rights of infants and purchasers, as it would be in the teeth of principles long and well settled, to hold invalid, sales for every departure from some directory provision of the statute, or for every error of decision in courts ordering these sales.

If these views be correct, we are left to inquire whether the County Court had jurisdiction of the parties. The notice, it will be remembered, was attached 10.—— sale: service of application. to the petition, referred to it and advised the parties interested that the application would be made to sell the land described therein, as to the correctness of which description there is no question. The officer returns that he served the notice by reading it to all the children or minors named therein.

The statute requires that the application to sell shall state the grounds thereof, be verified by oath, and a copy thereof, with a notice of the time at which such application will be made to the court, must be served personally upon the minor at least ten days prior to the time fixed for such application. Code, § 1501.

The petition did state the ground, was duly verified, and service was made more than ten days before the time

fixed for the hearing. But the objection is that *a copy of the petition* was not served upon these minors, and therefore that the court did not acquire jurisdiction over the parties.

We should be inclined to give more weight to this objection if the notice had been detached from the petition, and made no reference to it. But attached, as they were, we think it but a fair inference that they were treated as constituting one paper, and so served. The law does not require that a copy of the petition and notice should be left with the minor, but that he should be *personally served*. That the officer would comply with the statute by reading the same to the minor, or at least that the court might consistently hold this to be a good service, we entertain no doubt. For, at this time, the general statute regulating service did not require a copy to be given unless the same was demanded. Service, when made personally, was by reading. § 1721, and see chap. 133.

To hold that the return, in its language, did not cover and include in its meaning the entire paper in the officer's hands for service, would lead to the presumption that he failed and neglected to discharge a plain duty imposed upon him by law. A court will not intend facts inconsistent with the return of a writ in order to divest rights acquired under it; nor to defeat a judgment of a court of competent jurisdiction. *Boker* v. *Chapline*, 12 Iowa, 204.

But, if it be admitted that the notice alone was served, then we have this case: There was a personal service; this was returned, and, accepting it as sufficient, the court ordered the sale; this was made in good faith; the guardian made due return thereof; this was approved; deeds were made; these approved; the consideration paid; possession taken thereunder and continued adverse, notorious and uninterrupted for more than five years; and now it is claimed that

the title did not pass, and plaintiffs can contest defendant's right of possession because a copy of the petition was not served with the notice. Most appropriately, in our opinion, will the five years' statute cover such a case. It is not a case of no notice, but of defective notice; of no service, but defective service; and, after five years, plaintiff should not be allowed, collaterally, to aver its insufficiency.

Then, again, the statute declares that the proceedings of all courts of limited and inferior jurisdiction within this State, like those of general and superior jurisdiction, should be presumed regular, except in regard to matters required to be entered of record, and except when otherwise expressly declared. Code, § 2512. We know of no statute requiring the return of service in this class of cases, to be entered of record; or a recitation that due service was made, to be contained in the judgment; nor is there any expressly excepting County Courts, in proceedings of this character, from this general rule. Still, we are not to be understood as holding that if there was nothing to show service of any kind, we would indulge the presumption that there was jurisdiction over the person; and yet this is the rule, as applied to a court of general jurisdiction. But when there is a notice and return of personal service, a defect in it, which the tribunal has held and treated as immaterial, ought not and cannot in view of the language of our statute, and following the clear current of authorities in this State, avail to defeat a title, where the objection is raised for the first time in a collateral proceeding. See the cases before cited, and particularly *Cooper* v. *Sunderland* (3 Iowa, 114); *Morrow* v. *Weed* (4 Id., 77); cases which, we may here say, have been frequently criticised in argument, but which, upon a re-examination, we feel bound to affirm in their essential principles, however

much any member of the court may differ from some of the reasoning used. See also *Bonsal* v. *Isett*, 14 Iowa, 309; *Davenport Mutual Savings Fund and Loan Association* v. *Schmidt*, 15 Id., 213; *Homer* v. *Doe*, 1 Ind., 130; *Thompson* v. *Doe*, 8 Blackf., 336. The case of *Doe* v. *Bowen* (8 Ind., 197), relied upon by counsel, was one where the order of sale was made on the same day the inventory was filed, where no mention was made of the existence of an heir, and where there was no notice nor prayer for one. On this subject, see, further, *Lessee of Nelson* v. *Moon* (3 McLean, 319). In that case the infants were not served, but they appeared by a *guardian ad litem*. It was asserted that they could not waive process. Says McLean, J.: "If it be admitted that, for this defect in the proceeding, the Supreme Court would have reversed the decree, yet it does not follow that the decree, when collaterally assailed, can be treated as a nullity. * * * * The objection, at most, is to an irregularity, which might be a ground of reversal, but does not show a want of jurisdiction in the court; and this must clearly appear before the decree can be treated as a nullity." And see *Adkins* v. *Brewer*, 3 Cow., 206.

The great error into which counsel fall, is in failing to recognize the distinction between a *defective* service and *no service*. If, in this case, there had been no service, what has already been said unmistakably indicates (waiving the five years' limitations) that this sale would be held invalid. But there was a service; the return was, at most, irregular, such as might have been held bad on appeal. And after the County Court recognized its sufficiency, and approved the sale, made pursuant to its order, we will not, in this proceeding, inquire into its sufficiency. The proper persons were served; the court had jurisdiction of the subject-matter, and hence it differs from those cases, where the wrong person was served (by a substi-

tuted service, for instance), or where the court had no power to act upon the subject presented for its determination. It is as though the statute had required service by reading, and it was made by leaving a copy. It could not be claimed, in such a case, that the order following was void for want of jurisdiction. But, without further extending the argument, see *Miller* v. *Brinkerhoff*, 4 Den., 118; *Staple* v. *Fairchild*, 3 Comst., 41; *Skinnion* v. *Kelly*, 18 N. Y., 355; *Imbert* v. *Hallock*, 23 How. Pr., 456; *King* v. *Pool*, 36 Barb., 242; *Hunter* v. *Lester*, 10 Abb. Pr., 260; *President, &c.* v. *Goff*, 14 S. & R., 181.

Finally and very briefly, we notice the claim that the deeds made by the guardian were void, for uncertainty in the description of the premises sold and conveyed.

13. CONVEY-ANCE: description: uncertainty.

It seems that the land to be sold by the guardian was surveyed and platted, the lots being numbered from one to seven, and a copy of the plat is a part of the record. The deed, under which the defendant Hayes claims, describes, by metes and bounds, one and one-quarter acres of one of these lots; and refers to the lot as "lot (1) in the survey of said land, being a part of the S. E. ¼, sec. 5 T. 78 R. 24 W. 5 P. M." The other deed refers to the same survey by its date, and conveys all of said lot one, after excepting, by metes and bounds, the parcel formerly conveyed to the party under whom Hayes claims.

Here there is no uncertainty as to the quarter section in which the land is to be found. Nor, with the aid of the plat of the surveyor, is there the least doubt as to the lot sold and conveyed. Indeed, with this we have the exact locality of the land.

It is conceded that if land is so described in a conveyance as to render its identity wholly uncertain, the grant is void. See *Glenn* v. *Maloney*, 4 Iowa, 315; *Bosworth*

v. *Farenholtz*, 3 Id., 84.   This last case is more analogous
to the one before us than the first, and yet is quite unlike
it.   There the lot was described as so many feet of a cer-
tain lot, without more.   Nothing whatever was stated
from which the true location of the land could be ascer-
tained.   Here we have the data from which the land sold
can be known and fixed.   A grant is not void for uncer-
tainty if the court can imagine testimony which would
show any particular monument to be that which is
called for in the grant. *Blake* v. *Doherty*, 5 Wheat.,
359.   A party may introduce other evidence, whether in
writing or by parol, to apply the instrument to the subject-
matter. *Crafts* v. *Hibbard*, 4 Metc., 438.   A deed is
not void for this cause if it can be made good by any
construction. *Webber* v. *Webber*, 6 Greenl., 127 ; 2 Blacks.,
379 ;  and see generally *Dygert* v. *Pletts*, 25 Wend., 402 ;
*Laub* v. *Buckmiller*, 17 N. Y., 620 ; *Jackson* v. *Park-
hurst*, 4 Wend., 369 ; *Corbin* v. *Jackson*, 14 Id., 619.

Thus, at much length, we have passed upon the several
points made by appellants' counsel.   Their importance to
the parties, and the confidence with which they were
asserted, must furnish a sufficient excuse for noting many
of these, apparently well settled by our prior adjudications.

Affirmed.