KIMBALL v. The SAM SLICK. See Case No. 12,283.

KIMBALL (SCAMMON v.). See Case No. 12,435.

---

## Case No. 7,775.

### KIMBALL v. TAYLOR.

[2 Woods, 37.] [1]

Circuit Court, D. Louisiana. April Term, 1874.

PRACTICE AT LAW — LOUISIANA PRACTICE — SUMMONS—SERVICE UPON CURATOR AD HOC—EXISTENCE OF MARTIAL LAW — PERSONAL SERVICE — EXPELLED BY MILITARY.

1. The existence of martial law does not prevent the administration of justice between the citizens in the civil courts. When such courts are authorized by the military power, they may exercise their functions, and their judgments and decrees will be binding on the parties.

2. That provision of the constitution of the state of Louisiana which requires the style of process to be, "The State of Louisiana," does not apply to citations.

3. Under the practice of the clerks of the state courts of Louisiana, the absence of a seal from a citation in the copy of a record is no proof that the original citation was without seal.

4. Service of an irregular or erroneous summons or citation is not void, when the service is personal.

5. Property cannot be considered "abandoned," in the sense in which the word is used in the act of congress (13 Stat. 375, § 1), unless the owner was voluntarily absent, and engaged either in arms or otherwise in aiding or encouraging the Rebellion.

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

6. The Code of Louisiana required that before property could be seized and sold on an order of seizure and sale, the judgment debtor should be served with notice thereof. The defendant was expelled by the United States military authorities, from the city of New Orleans, and carried within the Confederate lines. During his enforced absence, his property in New Orleans was seized and sold by the sheriff, notice of the seizure and sale being served upon a curator ad hoc appointed by the court. *Held*, that the sale was void.

7. Such sale is not protected by the prescription of five years provided for in section 2809 of the Revised Code of Louisiana.

[This was an action at law by Samuel S. Kimball against Charlotte H. Taylor.]

Allan C. Story and Wm. Grant, for plaintiff.

L. Madison Day and H. J. Leovy, for defendants.

WOODS, Circuit Judge. This is a petitory action to recover possession of and establish title to certain real estate in the city of New Orleans. Both parties claim title under one Moses Greenwood. Plaintiff introduces an authentic act of sale from Greenwood to him, dated the 15th of December, 1870, and it is shown that in 1859, and for several years thereafter, Greenwood was in possession, and that defendant is now in possession. The defendant offers in evidence a record of the Sixth district court of the parish of New Orleans, in the case of Chapin v. Greenwood [unreported], showing a judgment in favor of Mrs. Chapin against Greenwood, of the date of February 7, 1863, for $1,000, with eight per cent. interest, a fieri facias issued thereon, dated December 16, 1864, and levied on the property in dispute in this case, and a sale thereof by the civil sheriff of the parish of Orleans, by virtue of said writ, on the 20th day of February, 1865, to Spencer Field. The defendant also introduces deeds from Field to Mrs. Marsden, and from Mrs. Marsden to herself; the latter dated November 15, 1867. The defendant, besides claiming title, pleads the prescription of five years. It is conceded that if the proceedings in the Sixth district court of the parish of Orleans, as shown by the record, were effectual to divest the title of Greenwood, the defendant ought to prevail, otherwise the finding and judgment of the court should be for the plaintiff, unless the plea of prescription should be found a bar to plaintiff's recovery.

I will proceed to notice the objections made to the record of the Sixth district court of New Orleans, in connection with the evidence offered in support of them. It is shown in proof, that during the time of the proceedings in that court, martial law had been declared by the commanding general, and was in force (general order of Major Gen. Butler, of May 6, 1862). The point is therefore made that there could be no civil court while martial law was in force. Martial law is not inconsistent with the administration of justice between the citizens in the civil courts. When such courts are authorized by the military power, they may exercise their functions, and their judgments and decrees are binding on the parties. The evidence in this case shows that notwithstanding the declaration of martial law, the civil courts of the city of New Orleans were allowed to transact business. General order No. 41, of Maj. Gen. Butler, of the date of June 10, 1862, prescribes an oath to be taken by judges, justices, sheriffs, attorneys and notaries, or other persons who hold any office which calls for the doing of any legal or judicial act. The clear inference from this order is, that officers having taken the oath required, were allowed to perform their duties, and the public history of this city shows that from the surrender of the city down to the close of the war, the civil courts were in the exercise of their functions. Among these was the Sixth district court. I think, therefore, that it was a competent court to hear and determine. This view was sustained by the decision of the supreme court of the United States, in The Grapeshot, 9 Wall. [76 U. S.] 129, in which Mr. Chief Justice Chase remarks: "It became the duty of the national government, whenever the insurgent power was overthrown, and the territory which had been dominated by it was occupied by the national forces, to provide, as far as possible, so long as the war continued, for the security of persons and property, and for the administration of justice."

It is next objected to the validity of the record that the citation was defective, and therefore the court acquired no jurisdiction. The citation is entitled of the state of Louisiana and of the Sixth district court of New Orleans. It is addressed to Moses Greenwood, the defendant, bears teste of the judge of the court, is signed by the clerk, and together with a copy of the petition on which it was issued, was served personally on the defendant, as appears by the return of the sheriff. The defects in the citation are alleged to be an absence of the seal of the court, and that the citation is not in the name of the state. The name of the state does appear in the title of the citation, but it is claimed that the style should be, "The State of Louisiana to Moses Greenwood." This is so inconsiderable a departure from what is claimed to be the law, as not to be worthy of serious attention. But in Bludworth v. Sompeyrac, 3 Mart. (La.) 720, it was held that the clause in the constitution which requires the style of process to be "The State of Louisiana" does not apply to citations. In regard to the omission of the seal to the citation in the copy of the record presented to us, a sufficient answer is found in the case of Medley v. Voris, 2 La. Ann. 140, in which the supreme court of this state held "that the omission of a seal in the copy of a citation in a record of appeal will not be considered as establishing that the citation was issued without a seal, it being the common practice of the clerks not to copy the seal in

making a copy of the citation." The court says: "As the party has not thought proper to produce in evidence the citation served upon him, neither this court nor the court below has been enabled to judge if the defect existed, and in the absence of such proof we will presume the clerk did his duty." But if it had been affirmatively shown to the satisfaction of this court that the citation was without seal, this objection to the citation could not stand, the record showing personal service. In Hollingsworth v. Barbour, 4 Pet. [29 U. S.] 477, the supreme court says: "There is an obvious distinction between this case and the case where there has been personal service of irregular or erroneous process. In that case the party has notice in part, and may, if he will, appear and object to or waive the irregularity." See, also, Pursley v. Hayes, 22 Iowa, 37; Thompson v. Doe, 8 Blackf. 336. I am of opinion, therefore, in the proofs as presented, that Greenwood was legally served with a sufficient citation, and that the court acquired jurisdiction of his person.

It is next objected to the validity of the record and proceedings in the Sixth district court, that the court had no jurisdiction to order a sale of the property in question, because it was "abandoned property," and the treasury agents were directed by law to take charge of and lease the same, and therefore no court had jurisdiction to seize and sell. It is a sufficient answer to this to say that the property was not abandoned, as that term is defined in the statute: "Properties shall be regarded as abandoned when the lawful owner shall be voluntarily absent therefrom, and engaged either in arms or otherwise, in aiding or encouraging the Rebellion." 13 Stat. 375, § 1. There is no evidence to show that Greenwood was voluntarily absent, and there is no proof that he "was engaged either in arms or otherwise, in aiding or encouraging the Rebellion." So there is no proof before us to establish that the property sold by order of the Sixth district court was, in fact, abandoned property. The evidence rather tends to prove that it was not. This objection to the record is therefore untenable.

Plaintiff next claims to have shown that Greenwood was expelled from this city by the military authorities pending the proceedings against him, and not permitted to return, and that as a consequence, all the proceedings had in the case after his expulsion were null and void. The legal proposition embraced in this objection to the record is sound, and sustained by the authorities. Dean v. Nelson, 10 Wall. [77 U. S.] 158.

The evidence shows that the judgment against Greenwood was signed February 12, 1863. By general orders No. 35, of Maj. Gen. Butler, dated April 27, 1863, registered enemies of the United States were ordered to leave the department. Greenwood was a registered enemy. On May 9th he was specially ordered to leave the city of New Orleans, and about that time he was taken by a military guard and forcibly put on board a schooner in the Old Basin, and sent to East Pascagoula, Mississippi, within the Confederate lines, where he arrived on the 17th of May, and whence he was forbidden to return, and did not return until long after the sale of the property in question. No proceedings subsequent to the judgment were had in the case against him in the Sixth district court until the 16th of December, 1864, when an order of seizure and sale was issued. The sheriff having returned that Greenwood could not be found, and that he was absent from the state, the court appointed a curator ad hoc, upon whom, according to the Code of Practice, notice of the seizure was served, and such proceedings were afterwards had as resulted in a sale of the premises in question. All these proceedings were in conformity to law, so that the only question now is, did the absence of Greenwood from the state, under the circumstances mentioned, render them invalid and void? This question is conclusively answered by the case of La Sere v. Rochereau, 17 Wall. [84 U. S.] 437. La Sere was expelled from New Orleans by the same order by which Greenwood was compelled to leave. During his absence, proceedings were instituted against him by executory process on two mortgages for the seizure and sale of the mortgaged premises situate in New Orleans. Service of notice was made upon a curator ad hoc, and after the legal delay, the sheriff advertised and sold the premises. These proceedings were declared void. The finding and judgment must therefore be for the plaintiff, unless his claim is prescribed by the Code of Louisiana. The defendant insists that the plaintiff's claim is so prescribed by section 2809 of the Revised Code. This section declares "that all informalities connected with and growing out of any public sale made by any person authorized to sell at public auction, may be prescribed against by those claiming under such sale after the lapse of five years from the time of making it, whether against minors, married women or interdicted persons." It is obvious that if it was necessary, as it is conceded it was, to serve Greenwood with process before an order of seizure and sale could be issued, that the want of such service is something more than an informality; that without such service the proceedings resulting in a sale are void, and that the sale was not made by a person authorized to sell. Therefore this section of the Code has no application to a case of this kind. The plea of prescription of five years is therefore not sustained by the facts. In accordance with the views expressed, the finding and judgment of the court must be for the plaintiff.

KIMBALL (UNITED STATES v.). See Cases Nos. 15,530 and 15,531.